## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN GREENE,<br><br>                    Plaintiff,<br><br>        v.<br><br>ACHILLION PHARMACEUTICALS, INC.,<br>NICOLE VITULLO, DAVID SCHEER,<br>FRANK VERWIEL, JASON S.<br>FISHERMAN, JOSEPH TRUITT, KURT<br>GRAVES, MICHAEL D. KISHBAUCH, and<br>ROBERT L. VAN NOSTRAND,<br><br>                    Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS<br>OF THE FEDERAL SECURITIES<br>LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Stephen Greene ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Achillion Pharmaceuticals, Inc. ("Achillion" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Achillion and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against Achillion and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Alexion Pharmaceuticals, Inc. ("Parent"), and Beagle Merger Sub, Inc. ("Merger Sub," and along with Parent, "Alexion") (the "Proposed Transaction").

2.      On October 15, 2019, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Alexion.  Pursuant to the Merger Agreement, the Company's shareholders will receive $6.30 in cash and one contractual contingent right value ("CVR") per share of Achillon common stock owned (the "Merger Consideration").

3.      On November 21, 2019, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Achillion and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Achillion shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.   In addition, the Company's stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of Achillion shares.

9.      Defendant Achillion is incorporated under the laws of Delaware and has its principal executive offices located at 1777 Sentry Parkway West, Building 14, Suite 200, Blue Bell, Pennsylvania 19422.   The Company's common stock trades on the NASDAQ under the symbol "ACHN."

10.     Defendant Nicole Vitullo ("Vitullo") is and has been the Chairman of the Company's Board at all times during the relevant time period.

11.     Defendant Joseph Truitt ("Truitt") is and has been the Company's President, Chief Executive Officer, as well as a director of Achillion at all times during the relevant time period.

12.     Defendant David Scheer ("Scheer") is and has been a director of Achillion at all times during the relevant time period.

13.     Defendant Frank Verwiel ("Verwiel") is and has been a director of Achillion at all times during the relevant time period.

14.     Defendant Jason S. Fisherman ("Fisherman") is and has been a director of Achillion at all times during the relevant time period.

15.     Defendant Kurt Graves ("Graves") is and has been a director of Achillion at all times during the relevant time period.

16.     Defendant Michael D. Kishbauch ("Kishbauch") is and has been a director of Achillion at all times during the relevant time period.

17.     Defendant Robert L. Van Nostrand ("Van Nostrand") is and has been a director of Achillion at all times during the relevant time period.

18.     Defendants Vitullo, Truitt, Scheer, Verwiel, Fisherman, Graves, Kishbauch, and Van Nostrand are collectively referred to herein as the "Individual Defendants."

19.     The Individual Defendants, along with Defendant Achillion, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20.     Achillion is a clinical-stage biopharmaceutical company focused on advancing its oral factor D inhibitors into late-stage development and commercialization. Each of the product

candidates in Achillion's factor D portfolio was discovered in its laboratories and is wholly owned by Achillion.  Achillion is focusing its product development activities on complement-mediated diseases where there are no approved therapies or significant unmet medical needs persist despite existing therapies.

### The Company Announces the Proposed Transaction

21.      On October 15, 2019, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> BOSTON & BLUE BELL, Pa.--(BUSINESS WIRE)--Alexion Pharmaceuticals, Inc. (NASDAQ:ALXN) and Achillion Pharmaceuticals, Inc. (NASDAQ:ACHN) today announced that they have entered into a definitive agreement for Alexion to acquire Achillion, a clinical-stage biopharmaceutical company focused on the development of oral small molecule Factor D inhibitors to treat people with complement alternative pathway-mediated rare diseases, such as paroxysmal nocturnal hemoglobinuria (PNH) and C3 glomerulopathy (C3G). Achillion currently has two clinical-stage medicines in development, including danicopan (ACH-4471) in Phase 2 and ACH-5228 in Phase 1.

> "Alexion has demonstrated the transformative impact that inhibiting C5 can have on multiple rare and devastating diseases. However, we believe this is just the beginning of what's possible with complement inhibition," said Ludwig Hantson, Ph.D., Chief Executive Officer of Alexion. "Targeting a different part of the complement system – the alternative pathway – by inhibiting Factor D production addresses uncontrolled complement activation further upstream in the complement cascade, and importantly, leaves the rest of the complement system intact, which is critical in maintaining the body's ability to fight infection. We believe this approach has the opportunity to help patients with diseases not currently addressed through C5 inhibition. We look forward to applying our nearly three decades of complement and development expertise to unlock the potential of oral Factor D inhibitors and bring these benefits to patients."

> "We have established great momentum – discovering and advancing several small molecules into clinical development that have the potential to treat immune-related diseases associated with the alternative pathway of the complement system," said Joe Truitt, President and Chief Executive Officer at Achillion. "Having already demonstrated proof-of-concept and proof-of-mechanism with our lead candidate, danicopan (ACH-4471), in PNH and C3G, respectively, we believe there is significant opportunity for Factor D inhibition in the treatment of other diseases as well. Alexion is an established leader in developing medicines

for complement-mediated diseases, and we look forward to working together to accelerate our objective of bringing novel therapies to patients as quickly as possible and ensuring that the broad promise of this approach is fully realized. We thank our employees, investigators and partners for their incredible work and commitment."

**Transaction Details**

The initial consideration of approximately $930 million, or $6.30 per share of Achillion common stock, will be funded with cash on hand. As part of the acquisition, Alexion will also be acquiring the cash currently on Achillion's balance sheet. As of September 30, 2019, this was approximately $230 million; the actual amount will be determined as of the transaction close. The transaction includes the potential for additional consideration in the form of non-tradeable contingent value rights (CVRs), which will be paid to Achillion shareholders if certain clinical and regulatory milestones are achieved within specified periods. These include $1.00 per share for the U.S. FDA approval of danicopan and $1.00 per share for ACH-5228 Phase 3 initiation.

Alexion's acquisition of Achillion is subject to the approval of Achillion shareholders and satisfaction of customary closing conditions and approval from relevant regulatory agencies, including clearance under the Hart-Scott Rodino Antitrust Improvements Act. Pending these approvals, the transaction is expected to close in the first half of 2020.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

22.     On November 21, 2019, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

23.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Management's Financial Projections**

24.     The Proxy Statement contains projections prepared by Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

25.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

26.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

27.     Specifically, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) total revenue; (ii) operating income; and (iii) unlevered free cash flows.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

28.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding Centerview's Financial Opinion**

29.     The Proxy Statement contains the financial analyses and opinion of Centerview Partners LLC ("Centerview") concerning the Proposed Transaction, but fails to provide material information concerning such.

30.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values of the Company; (ii) the basis for the assumption that the Company's unlevered free cash flows would decline in perpetuity after December 31, 2038 at a rate of decline year-over-year of 80.0%; (iii) the inputs and assumptions underlying discount rates ranging from 11.0% to 13.0%; and (iv) the number of the Company's fully diluted shares outstanding.

31.     With respect to Centerview's *Selected Public Company Analysis*, the Proxy Statement fails to disclose the basis for selection of a reference range of Enterprise Values of $250 million to $450 million.

32.     With respect to Centerview's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the basis for selection of a reference range of Transaction Values of $400 million to $925 million.

33.     With respect to Centerview's analysis of stock price targets, the Proxy Statement fails to disclose which specific stock price targets were observed in Centerview's analysis.

34.     With respect to Centerview's analysis of premiums paid, the Proxy Statement fails to disclose the specific premiums paid in each of the transactions observed by Centerview in

its analysis.

35.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

36.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

Act, provides that communications with stockholders in a recommendation statement shall not

contain "any statement which, at the time and in the light of the circumstances under which it is

made, is false or misleading with respect to any material fact, or which omits to state any

material fact necessary in order to make the statements therein not false or misleading." 17

C.F.R. § 240.14a-9.

40.     Defendants have issued the Proxy Statement with the intention of soliciting

shareholders support for the Proposed Transaction. Each of the Defendants reviewed and

authorized the dissemination of the Proxy Statement, which fails to provide critical information

regarding, among other things, the financial projections for the Company.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material

facts necessary to make the statements made not misleading. Each of the Defendants, by virtue

of their roles as officers and/or directors, were aware of the omitted information but failed to

disclose such information, in violation of Section 14(a). The Defendants were therefore

negligent, as they had reasonable grounds to believe material facts existed that were misstated or

omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information

to shareholders although they could have done so without extraordinary effort.

42.     The Defendants knew or were negligent in not knowing that the Proxy Statement

is materially misleading and omits material facts that are necessary to render it not misleading.

The Defendants undoubtedly reviewed and relied upon the omitted information identified above

in connection with their decision to approve and recommend the Proposed Transaction.

43.     The Defendants knew or were negligent in not knowing that the material

information identified above has been omitted from the Proxy Statement, rendering the sections

of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

44.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

45.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

46.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

47.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.     The Individual Defendants acted as controlling persons of Achillion within the

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Achillion, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

51.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

53.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 26, 2019

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ & MILLER LLP**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*